**PACIFIC COAST ENGINEERING COMPANY, Appellant,**

v.

**TRINITY CONSTRUCTION COMPANY, Inc., Appellee.**

No. 15467.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 13, 1971.

Rehearing Denied June 3, 1971.

Karl E. Kraft, Houston, for appellant.

David Bland, Houston, for appellee; Barrow, Bland & Rehmet, Houston, of counsel.

BELL, Chief Justice.

In this case in the trial court the appellant was plaintiff and cross-defendant and appellee was defendant and cross-plaintiff. Appellant, after trial to a jury, recovered judgment against appellee in the amount of $31,382.62, with interest from the date of judgment. Appellant appeals because it was denied recovery of an attorney's fee of $18,500.00 found by the jury and because of disallowance of certain interest and some other damages sought by it. Appellee was denied any recovery on its cross-action. By cross points appellee complains of the judgment rendered against it and in favor of Pacific and because judgment should be in its favor on its cross-action.

We will, however, refer to Pacific as Pacific or appellant and Trinity as Trinity or appellee.

In 1959 Trinity entered into a contract with the United States, through the Corps of Engineers, to construct Canyon Dam in Comal County. Trinity then entered into a contract with Pacific to fabricate four hydraulically operated gates to control the flow of water from the reservoir created by the dam. The contract price for the four gates was $233,800.00. Payment on the gates was made, except for a retainage of 10%, as provided in the contract. The full contract price was to be paid on acceptance by the Corps of Engineers of the gates, or, of acceptance of the project according to appellee.

The four gates were fabricated, assembled and shop tested in California, the tests being conducted by Pacific employees in the presence of representative of the Corps of Engineers. This resulted in approval by the Corps of Engineers. In early 1960 the gates were disassembled and shipped to the jobsite. The gates were to be reassembled and installed by Trinity. Pacific offered, for a fee, to send its representatives to supervise installation, but Trinity chose to make installation. At Trinity's request Pacific furnished written directions and procedures to be followed. After the gates were installed they were field tested on May 1, 1961. On such test damage resulted to Gate No. 1. The gate stem which is attached to the piston in the hydraulic cylinder mounted on top of the gate bonnet, and which is used to raise and lower the gate leaf in the gate frame and bonnet, did not travel freely up and down as it was designed to do. The stem was caused to bind and scrape against the stainless steel gland or bushing located at the top of the bonnet resulting in some of the monel metal cladding, or outer surface on the stem, being torn or scraped from the steel core and gland and related packing and gaskets being damaged. Pacific's position is that the misalignment was brought about by Trinity when it set the gate preparatory to setting it in concrete. Pacific says the gate frame was not set level and plumb but was tilted when Trinity encased it in concrete. Pacific says the bottom of the assembly was tilted to the west and north and the upper portion, that is, the bonnet was tilted to the east and south. This tipping of the gate frame, Pacific contends, at an angle or "dogleg", in view of the microscopic tolerances, caused the damage.

Trinity contends there were defects in fabrication that caused the damages. Trinity urges many defects but relies principally on the following:

1. Failure of Pacific to machine a protruding brass seal flush with the gate leaf on the south.

2. A .037 mislocation of the gate stem to one side.

3. Excessive metal left on adjacent to a bonnet guide.

4. Extension of the south bonnet guide .031 of an inch to the north of the south gate frame guide.

Pacific sued on the contract for full performance to recover the unpaid retainage, plus interest, for the reasonable expense incurred in making repairs to Gate No. 1, plus interest, and for attorney's fees, for material furnished. By a trial amendment Pacific sought recovery on the theory of substantial performance.

Trinity sought recovery of the reasonable cost and expense allegedly caused it by reason of its work made necessary because of the failure of Gate No. 1, which failure was allegedly caused by defective fabrication.

The jury found as follows in response to the following numbered special issues:

1. The hydraulic gates were fabricated and delivered by Pacific in substantial performance of the contract, plans and specifications.

2. It would reasonably cost Trinity $2900.00 to remedy the failure of Pacific to fabricate the four gates in accordance with its contract and within the contemplation of the plans and specifications.

3. Failed to find the failure of Pacific to manufacture and deliver Gate No. 1 within the contemplation of the contract, plans and specifications was a producing cause of damage to Gate 1.

4. Failed to find such failure was the sole producing cause of such damage.

5. Found the reasonable cost to Trinity to rectify, repair and recondition Gate No. 1 as a result of the damage occurring May 1, 1961 to be nothing.

6. Found the failure of Trinity to erect and install Gate No. 1 within the contemplation of the contract, plans and specifications and reasonably prudent construction practices was a producing cause of damage occurring to Gate No. 1.

6–A. Failed to find that such failure by Trinity was the sole producing cause of such damage.

7. Found that by requesting Pacific to repair, rectify and recondition the gate Trinity did not impliedly agree to pay Pacific the reasonable and customary charges for such work.

8. Found the reasonable and necessary expense incurred by Pacific in repairing, rectifying and reconditioning the gate to be $1961.05.

9. Found a reasonable attorney's fee for Pacific for prosecution and collection of such expense to be $1000.00.

10. Found a reasonable attorney's fee to Pacific for prosecution of its claim against Trinity over and above the attorney's fee found for collecting for the repairs to be $18,500.00.

On Trinity's motion the trial court disregarded the jury's finding in answer to Issue No. 10 and did not allow recovery of an attorney's fee of $18,500.00. The court refused Pacific's motion to disregard the answer to Issue No. 8 finding $1961.05 and render judgment on that issue in the amount of $7919.00. On Pacific's motion the court also disregarded the answer to Issue No. 7 but allowed recovery of only the amount found by the jury in answer to Issue No. 8.

The trial court denied recovery of an attorney's fee in the amount of $18,500.00 found in answer to Issue No. 10 because it concluded that since the gates were fabricated and delivered pursuant to special contract such a fee was not within the purview of Article 2226, V.A.T.S.

We are of the view that the trial court assigned the wrong reason but correctly refused to allow recovery for another reason. The fact there is a contract for materials furnished does not preclude recovery under Article 2226. Page v. Superior Stone, 412 S.W.2d 660, Tex.Civ.App., ref., n. r. e. Though a wrong legal theory

is assigned, if the action is sustainable under the facts on another legal theory, the erroneous reason assigned will not present error in disallowing the fee.

Appellant urges the fee is allowable on the theory of material being furnished since the finished product was incorporated into the dam. It cites, among other cases, that of United States of America for Use & Benefit of Caldwell Foundry and Machine Co., Inc. v. Texas Construction, 237 F.2d 705 (5th Cir.) and the case of Shivers v. Feuhs, Tex.Civ.App., 438 S.W.2d 585, ref., n. r. e., decided by this Court. They support appellant's position. However, the Texas Supreme Court, in the case of Tenneco Oil Co. v. Padre Drilling Co., 453 S.W.2d 814, expressly disapproved our holding in Shivers and many other comparable cases. It did not in its opinion allude to Caldwell. Again the Supreme Court, in the case of George Linskie Co., Inc. v. Miller-Picking Corp., Tex., 463 S.W.2d 170, while allowing attorney's fees for repairs to air conditioners, distinguishes such case from Tenneco and in so doing used this significant language:

> " * * * the present case is distinguishable (from Tenneco) because there was (in the case before it) no agreement shown for a 'turn-key' job on repair of the air conditioners. Here the materials were furnished for the use and benefit of defendant at its special instance and request as material supplied on this job for this corrective work."

■ In the case before us there was a contract with Pacific for a "turn-key" job for the fabrication and delivery of the four gates. Under the authority of Tenneco and Linskie we hold that the trial court did not err in disallowing the attorney's fee of $18,500.00.

■ Appellant complains that the trial court should have disregarded the jury's answer to Issue No. 8 finding the reasonable and necessary expense incurred by Pacific was $1,961.05 and in not rendering judgment on this issue for $7,919.00. Its position is that the undisputed evidence is that such expense was $7,919.00. In order to sustain this point we would have to hold such amount was established as a matter of law, because we may not in the exercise of our fact finding power employ additur. Guckian v. Fowler, 453 S.W.2d 323 (Tex. Civ.App.), error dism'd. We are unable to say as a matter of law that such larger amount was established. Testimony as to what would be the reasonable and customary charges came alone from employees of Pacific who were, under the facts of this case, interested witnesses, and whether such charges were reasonable and customary lies within the realm of opinion evidence.

The trial court did not err in refusing appellant interest on the retainage or the cost of repair prior to May 23, 1962. The pleading of Pacific clearly states that the installation of the gates, including the one damaged, was accepted by the Corps of Engineers May 23, 1962, and the "retainage" became due and payable by defendant's purchase order dated January 27, 1959. This is a judicial admission of the date of acceptance. The contract provided for final payment on acceptance by the Corps of Engineers.

We now turn to the cross-points assigned by Trinity.

■ We sustain appellee's complaint that the court erred in allowing appellant a $1,000.00 attorney's fee for prosecution of its claim to recover the reasonable expense in repairing, rectifying and reconditioning Gate 1. Under the holding of Tenneco Oil Co. v. Padre Drilling Co., supra, there could be no recovery by Pacific for labor done or services rendered by its employees. There could be recovery for materials furnished. The only thing we find that would constitute materials furnished would be the four new glands. We nowhere find what the reasonable value of these was. Too, the evidence on what would be a reasonable attorney's fee is all based on the total amount of work done by counsel for prose-

cuting all claims against appellee both in this trial and the previous trial. Nowhere can we locate evidence showing what work of counsel is assignable to efforts to collect for such item. Nor is there testimony showing what would be a reasonable attorney's fee for collecting such item. There is, therefore, no evidence of probative force to support the jury's answer. It would be based purely on speculation.

■ The court did not err in allowing appellant to file its trial amendment setting up substantial performance. Appellee was in no way shown to have been prejudiced in presenting any grounds of defense, or any ground of recovery on its cross-action. Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422 (Tex.S.Ct); Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605.

■ The court correctly disregarded the jury's answer to Issue No. 7 where the jury failed to find that appellee impliedly agreed to pay for repairs, etc. made by Pacific to Gate 1. The evidence undisputedly shows that the work done to repair the damage to the gate was done at the request of appellee. Appellee knowingly accepted the benefits of the work. Under such circumstances there is an agreement implied in law that the recipient of the benefits is obligated to pay the reasonable value of such benefits. Ferrous Products Co., Inc. v. Gulf States Trading Co., Inc., 160 Tex. 399, 332 S.W.2d 310.

Appellee urges as to Issues 1, 2, 3, 4, 5 and 6 that there is no evidence to support the jury's answers and that the evidence supporting the answer to each of said issues is factually insufficient and each answer is contrary to the overwhelming weight and preponderance of the evidence.

We have studied and considered the very voluminous record. In passing on the no evidence points we have considered only that evidence and the reasonable inferences that can be drawn therefrom which is favorable to the answers. In passing on the factually insufficient and greater weight and preponderance of the evidence assignments we have considered all the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

The contract between appellant and appellee called on appellant to fabricate and deliver four hydraulic gates for a compensation of $233,800.00. By a change order this was reduced by $500.00. Without question three of the gates were in substantial conformity with the contract and plans and specifications and no difficulty was experienced in their operation. Only one gate was shown not to be in complete accord with those instruments. The real dispute is concerning how great the deficiencies were and whether the deficiencies caused Gate 1 to fail on being field tested. Ninety percent of the purchase price of the four gates was paid.

While the gates were being fabricated inspection of the work was made from time to time by a representative of the Corps of Engineers. The assembling of the machines before delivery was also inspected by such representative. After the machines had been assembled in the shop they were shop tested under the direction of such inspector. They were run through ten or twelve cycles and operated properly. There was no interference between the gate leaf assembly and the gate guide. There was some deficiency regarding the piston rings in the hydraulic cylinder. This deficiency was later corrected at Pacific's shop before shipment of the hydraulic cylinder, gate stems and bonnet covers to the jobsite. Immediately following the shop tests the gate frames, bonnets and gate leaves were shipped to the jobsite. Prior to shipment of the various parts they were approved and accepted by the inspector as being satisfactorily fabricated in accordance with the contract, plans and specifications. There were certain inconsequential deviations from prescribed dimensions of the gates, some of which resulted from the inspector's directions. After the component parts of all the gates were received at the jobsite

they were installed by Trinity. They were to have been installed in conformity with provisions of the prime contract and procedure suggested by Pacific. There is evidence that they were not. There was evidence that Trinity positioned the gate frame in the structure, blocked and shored it, and then fastened it in place by embedding it in concrete. The bonnet assembly was bolted to the gate frame and braced. Concrete was then poured around it without its having been plumbed or squared and without the gate leaf guides having been aligned with those of the embedded gate frame by the use of steel shims or some other approved method. Trinity made no determination as to whether the gate leaf guides in the gate frame and the bonnet were in proper vertical alignment prior to the bonnet being embedded in concrete. The gate frame and bonnet were thus misaligned so that the gate leaf guides deviated from a common vertical plane far greater than the permissible deviation. This all created an angle at the juncture of the gate frame and bonnet. There was also evidence that the lower gate stem nut had been tightened against the gate leaf. This prevented the lower stem from being sufficiently loose to seek or assume its center or proper operating relationship to the leaf. There had been no lubricant put at the lantern ring located within the packing at the water seal. There was a dispute as to whose obligation this was. We do not mean the above was conclusively established. There is, however, such evidence.

There is evidence that the dogleg was caused by Pacific having mismachined the bottom flange of the bonnet, though there is also evidence that the bonnet flanges were machined within the allowed ⅟₆₄th tolerance. There is evidence that would support the conclusion that the four deviations we mentioned in the fifth paragraph of our opinion existed. Such evidence, however, is not conclusive.

There were varying opinions as to the cause of the malfunction in Gate 1. There is evidence to support the conclusion that

fabrication error caused the gate failure, but there is also evidence to support the conclusion that faulty installation was the cause.

There are a number of other deficiencies urged by Trinity as showing Pacific did not comply with the contract. We will not specifically notice them. It is sufficient to say that they in the aggregate were relatively minor when the over-all contract for the four gates is considered. Some of them were subsequently remedied by Pacific or at its expense. There is evidence that the fabrication errors could be remedied at a cost of about $400.00. The expense to Trinity of remedial work done by it, so Trinity urges, was some $21,000.00. However, this amount does not represent the expense in correcting the errors in fabrication. It, except for a relatively small amount, represents claimed expense incurred in rectifying the damage done in the initial field test of Gate 1. Whether this is properly to be considered in determining whether there was substantial performance depends on whether the fabrication deficiencies were the cause of the damage. The effect of the jury findings is that they were not the cause. The best we are able to tell from the record is that the most that the evidence shows such expense could be is between three and four thousand dollars. This includes the expense concerning some alleged deficiencies, the existence of which is in dispute. As above pointed out there is testimony that would support a lower figure. The jury found it was $2,900.00.

■ There is in our opinion no evidence of any bad faith. We hold, therefore, that this case is controlled by the case of Atkinson v. Jackson Bros., et al., 270 S.W. 848 (Tex.Com.App.), holdings approved by the Supreme Court. See also Pacific Coast Engineering Co. v. Trinity Construction Co., 410 S.W.2d 797 (CCA—Waco), ref., n. r. e. We conclude that there was evidence of probative force to support the jury's answers to Issues Nos. 1 and 2 and

that they are supported by sufficient evidence and are not contrary to the overwhelming weight and preponderance of the evidence.

 On a basis of the testimony, the substance and effect of which we have summarized, we hold that there was evidence of probative force to support the jury's answers to Special Issues Nos. 3, 4 and 6, and such evidence is sufficient and the answers are not contrary to the overwhelming weight and preponderance of the evidence.

Finally, Trinity complains of the jury's answer to Issue No. 5 where it found "None" as the reasonable cost to Trinity to repair, rectify and recondition Gate No. 1 as a result of the damage occurring May 1, 1961. Even though there is evidence of some such expense, the jury had found that Trinity's acts were a producing cause of such damage and that Pacific's acts were not a producing cause; therefore, this finding is immaterial. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (Tex.Com.App.), opinion adopted by Supreme Court.

The judgment of the trial court will be modified by eliminating recovery of the $1,000.00 attorney's fee and as modified the judgment is affirmed.

### On Motions for Rehearing

Both Pacific and Trinity have filed motions for rehearing. We overrule Trinity's motion in its entirety.

In our original opinion we held that Pacific was entitled to interest on the retainage from May 23, 1962, because the contract between Trinity and Pacific called for payment for the gates upon acceptance by the Corps of Engineers and Pacific alleged acceptance on May 23, 1962. The trial court had so held. However, while we stated the trial court correctly allowed interest on retainage and "the cost of repairs" from such date, we find the trial

court allowed interest on the "cost of repairs" made by Pacific only from the date of judgment. We, therefore, grant Pacific's motion for rehearing to the extent that the judgment of the trial court will be further modified by rendering judgment for Pacific for interest at the rate of 6% per annum on $1961.05, the cost of its repairs, from May 23, 1962.

Also, in our original disposition we taxed all costs of appeal against Pacific. We grant Pacific's motion so that the costs on appeal will be divided equally between Pacific and Trinity.

Other than in the two specified particulars Pacific's motion for rehearing is overruled.