**Affirmed in Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and Memorandum Opinion filed October 11, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-10-01180-CV

### MNC SPRING SHADOWS, L.P. AND MNC MEMORIAL CITY TERRACE, L.P. AS SUCCESSORS IN INTEREST TO FEDGESS SHOPPING CENTERS, LTD., Appellants

### V.

### KEARNEY, L.L.C. DBA CORNBREAD'S BILLIARDS AND BAR AND VINCENT E. KEARNEY, Appellees

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2008-06492**

## M E M O R A N D U M   O P I N I O N

Appellants, MNC Spring Shadows, L.P. and MNC Memorial City Terrace, L.P. as Successors in Interest to Fedgess Shopping Centers, Ltd. (collectively "MNC"), appeal a judgment awarding some of the damages requested in their breach-of-contract suit against appellees, Kearney, L.L.C. dba Cornbread's Billiards and Bar ("Kearney, L.L.C.") and Vincent E. Kearney, but no attorneys' fees. In two issues, MNC contends there is no evidence to support (1) the amount of damages assessed by the jury because

MNC conclusively established its right to recover the full damages sought, and (2) the jury's finding that MNC incurred no reasonable and necessary attorneys' fees. We affirm in part, reverse and render in part, and reverse and remand in part.

## I. BACKGROUND

Pursuant to a written agreement, MNC leased space in a shopping center to appellee, Kearney, L.L.C. dba Cornbread's Billiards and Bar, for operation of its family pool hall.[1] Appellee, Vincent E. Kearney, who was sole owner and president of Kearney, L.L.C., signed a guaranty of all its obligations under the lease. The lease term commenced on November 1, 2003 and expired on October 31, 2008.

Kearney, L.L.C. and Vincent E. Kearney (hereinafter collectively "Kearney") agreed to pay rent plus "CAM" (central maintenance), insurance, tax, and sign charges on the first day of each month.[2] Relative to the tax charge, Kearney was obligated to bear a share of certain taxes on the leased premises. The lease provided that MNC would estimate the amount of the required monthly tax charge. Then, upon receipt of tax and assessment bills for a calendar year during the lease term, MNC was required to furnish Kearney a written statement of the actual tax charge for that year. If the actual tax charge for a calendar year exceeded the total estimated tax charges paid by Kearney for such year, it was required to pay MNC the difference "on demand."

In September 2007, MNC notified Kearney that it owed $4,688.34 as the reconciliation between the tax charge paid and the tax charge actually due for 2006. When Kearney had failed to pay this amount by late October 2007, MNC sent a notice that payment was past due and demanded payment within ten days. By December 4, 2007, a portion of this amount remained outstanding as well as the rent and other charges

---

[1] The previous property owner was identified as the landlord under the lease, but MNC became the landlord when it purchased the property.

[2] We will hereinafter refer to appellees collectively as "Kearney" except where necessary to refer to them separately because they undisputedly bore the same obligations under the lease by virtue of the guaranty, jury questions were phrased relative to their liability collectively, and judgment was rendered against them "jointly and severally."

due for December 2007, which was not the first instance in which Kearney failed to timely remit the required monthly payments. On that day, MNC wrote to Kearney demanding payment by December 14, 2007 of the total due in the amount of $11,241.34. Although Kearney paid some of this amount by December 14, 2007, there remained an outstanding balance of $1,188.34, which represented a portion of the unpaid tax charge.

The lease set forth several alternative remedies available to MNC in the event of Kearney's default, including termination of its right to possess the premises but not its obligations under the lease, particularly the requirement that it pay rents and other charges as they became due. On December 17, 2007, MNC wrote Kearney, terminating its right of possession but not its obligations and demanding that it vacate the premises. Vincent E. Kearney testified that he tendered $1,188.34 to MNC on December 20, 2007, but MNC refused to accept it. In any event, MNC filed a forcible-detainer action, but Kearney had vacated by the time of the hearing, and the justice court rendered judgment for Kearney. However, Kearney failed to subsequently pay rent and the other required monthly charges as they became due from January 2008 through October 31, 2008—the expiration of the lease term.

MNC sued Kearney for breach of contract. Kearney answered that it did not breach the lease but instead MNC refused to accept Kearney's tendered payment of $1,188.34, MNC breached the lease, and MNC improperly terminated Kearney's right of possession. A jury found Kearney failed to comply with the lease and that MNC did not fail to comply. The jury then found that MNC sustained $1,188.34 in damages but incurred no reasonable and necessary attorneys' fees. MNC filed a motion to disregard the findings relative to damages and attorneys' fees on no-evidence grounds. The trial court denied the motion. On November 1, 2010, the trial court signed a judgment awarding MNC $1,188.34, pre- and post-judgment interest, and costs against appellees, jointly and severally, but no attorneys' fees.

## II. ANALYSIS

In two issues, MNC contends the trial court erred by denying MNC's motion to

3

disregard the jury's findings on damages and attorneys' fees. We review denial of a motion to disregard jury findings as a legal-sufficiency challenge. *Excel Corp. v. McDonald*, 223 S.W.3d 506, 508 (Tex. App.—Amarillo 2006, pet. denied). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* A party attacking legal sufficiency relative to an adverse finding on which it had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

## A.    Damages

In its first issue, MNC contends the evidence is legally insufficient to support the jury's finding of $1,188.34 in damages because MNC conclusively proved that it sustained $96,409.53 in damages. We agree.

In Question 3 of the charge, the jury was asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [MNC] for their damages, if any, that resulted from [Kearney's] failure to comply [with the lease]?

> Consider the following elements of damages, if any, and none other.

>   a. The amount of all unpaid Minimum Rent due under the Lease Contract.

>   b. The amount of all unpaid CAM Fees due under the Lease Contract.

>   c. The amount of all unpaid Insurance Charges due under the Lease Contract.

4

> d. The amount of all unpaid Tax Charges due under the Lease Contract.

The jury's award of $1,188.34 represented only the tax charge that remained unpaid in December 2007, prompting MNC to terminate the lease. Kearney's failure to timely pay the $1,188.34 was indeed a default under the lease. However, the lease provision prescribing MNC's various rights in the event of Kearney's default included the following option:

> Terminate this Lease, or *terminate Tenant's rights under this Lease (but not its obligations)*, and in either event Landlord shall have the right to immediate possession of the Premises and may reenter the Premises, change the locks and remove all persons and property therefrom . . . and such termination and reentry on the part of Landlord shall be without prejudice to any remedy available to Landlord for arrears of Rent, breach of contract, damages or otherwise, *nor shall the termination* of this Lease or *of Tenant's rights under this Lease by Landlord acting under this subsection be deemed in any manner to relieve Tenant from the obligation to pay the Rent and all other amounts due or to become due as provided in the Lease for and during the entire unexpired portion then remaining of the Term. . . .*

(emphasis added).

Therefore, in light of Kearney's default, MNC was entitled to terminate Kearney's right of possession, but not its obligations, including the requirement that it pay all rent and other charges itemized in Question 3 as they became due during the remainder of the lease term. Consistent with its rights under this provision, MNC chose to sue Kearney for these latter amounts.

Harry Hadland, MNC's vice-president of retail operations and representative at trial, provided undisputed testimony that the total amount of $96,409.53 in unpaid rent and CAM, tax, and insurance charges was due under the lease from January 2008 through October 31, 2008. At trial, Vincent E. Kearney admitted that this amount had not been paid. Moreover, Kearney does not present its own appeal or any cross-point in this appeal challenging the jury's finding that Kearney breached the lease. The gist of Kearney's appellate argument is that the evidence demonstrated it paid all amounts due

5

through December 2007 and eventually tendered the $1,188.34, even if that tender was untimely. However, Kearney does not dispute that it failed to pay all amounts due for January through October 2008 or present any reason that it had no obligation to pay these amounts contrary to the clear terms of the above-quoted lease provision.[3]

Accordingly, MNC conclusively established that it sustained $96,409.53 in damages. *See Aztec Corp. v. Tubular Steel, Inc.*, 758 S.W.2d 793, 800–01 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding evidence was legally insufficient to support jury's awarding buyer only $35,000 when it prevailed on claim that seller failed to deliver products conforming with contract because evidence conclusively established contract price—statutorily allowed measure of damages—was $64,739). We sustain MNC's first issue.

## B.   Attorneys' Fees

In question 4 of the charge, the jury was asked to determine "a reasonable fee for the necessary services" of MNC's attorneys "in this case" for preparation and trial, an appeal to a Court of Appeals, and an appeal to the Supreme Court of Texas. The jury answered with a zero figure for all categories. In its second issue, MNC challenges legal sufficiency of the evidence to support this finding.

"A person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac.

---

[3] The gist of Kearney's contention at trial was that MNC wrongfully terminated Kearney's right of possession because MNC had consistently over the years accepted late payments or installments for amounts due under the lease. More specifically, Kearney complained that MNC had accepted some untimely installments toward the 2006 tax charge at issue but refused to accept its final tendered payment of $1,188.34 although it was untimely. Over MNC's objection, the trial court submitted Kearney's contention via a jury question on whether MNC also breached the lease, as opposed to a question on a defense such as excuse, although Kearney had not pleaded any claims for relief. Regardless, to the extent Kearney's contention constituted a defense to MNC's claim, it would concern only whether MNC wrongfully terminated Kearney's right of possession and not whether Kearney owed the amounts due for the remainder of the lease term. Even if MNC had accepted the late payment and allowed Kearney to remain in possession, it would have still owed these amounts due for the remainder of the lease term. Nonetheless, we need not fully evaluate any issues pertaining to Kearney's position at trial because, on appeal, it does not challenge the jury's finding of breach or dispute that it failed to pay the amounts due for the remainder of the lease term.

& Rem. Code Ann. §38.001(8) (West 2009). If attorneys' fees are proper under section 38.001(8), such an award is mandatory, not discretionary. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009); *Dixon v. Modelist*, 157 S.W.3d 454, 456 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787 & n.4 (Tex. App.—Houston [14th Dist.] 2002, no pet.). If the claimant presents evidence that attorney services were provided and the value thereof, a zero award for attorneys' fees is proper only if the evidence affirmatively shows that no attorney services were needed or any services provided were of no value. *See Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors*, *Inc.*, 300 S.W.3d 738, 739 (Tex. 2009); *Hubbard*, 76 S.W.3d at 787.

Additionally, the lease includes a provision mandating payment of attorneys' fees by a breaching party:

> In the event either party defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and the other party places the enforcement of this Lease, or any part thereof, or the collection of any Rent due or to become due hereunder, or recovery of possession of the Premises in the hands of an attorney, or files suit upon the same, the defaulting party agrees to pay to the non-defaulting party all costs of suit and/or other enforcement of the non-defaulting party's rights hereunder, including court costs and reasonable attorney's fees.

At trial, Dylan Russell, MNC's attorney, described the general services performed by his firm since the outset of this matter and presented bills detailing these services. The bills reflected total pre-trial fees of $57,675.46 based on an hourly rate of $225, which Russell opined was reasonable. He also estimated the total fees at the trial-court level would reach $65,000 factoring in the trial and post-trial proceedings. Additionally, Russell opined regarding reasonable and necessary fees for appellate proceedings: $30,000 in the event of an appeal to a court of appeals; $10,000 if a petition for review is filed in the Supreme Court of Texas; and $30,000 if the petition for review is granted.

Kearney suggests, and the trial court seemed to recognize, that the jury concluded no services were needed because Kearney eventually tendered the $1,188.34 in outstanding tax charges, thus obviating the necessity of filing suit. As we have discussed,

7

even if Kearney eventually tendered the $1,188.34, it failed to pay all rent and other charges due until expiration of the lease term, thereby necessitating this suit. Accordingly, MNC conclusively proved its right to recover attorneys' fees.

The reasonableness of attorneys' fees is ordinarily an issue for the factfinder. *Smith*, 296 S.W.3d at 547. The factfinder should consider the following factors when determining reasonableness of a fee: (1) time and labor required, novelty and difficulty of the questions involved, and skill required to perform the legal service properly; (2) likelihood that acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) amount involved and results obtained; (5) time limitations imposed by the client or the circumstances; (6) nature and length of the professional relationship with the client; (7) experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see Smith*, 296 S.W.3d at 547–48.

Generally, the testimony of an interested witness, such as a party to the suit, although not contradicted, does no more than raise a fact issue for the factfinder's determination. *Smith*, 296 S.W.3d at 547 (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). As an exception to this rule, when "the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.'" *Id.* (quoting *Ragsdale*, 801 S.W.2d at 882). The court, as trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so. *Id.* (quoting *Ragsdale*, 801 S.W.2d at 882).

We recognize that Kearney did not directly controvert Russell's testimony regarding reasonable and necessary fees. Nevertheless, Russell's testimony was not free

from contradiction because he relied, in part, on the bills to prove reasonableness of the total fees sought, but the bills demonstrated that not all fees charges were reasonable and necessary relative to the relief obtained in this suit. In particular, the bills included fees relative to terminating Kearney's right of possession and preparing for, and attending, trial of the forcible-detainer action. However, MNC did not prevail in the forcible-detainer action because Kearney had vacated the premises before that trial. Accordingly, awarding MNC the total fees included in the bills would be tantamount to awarding fees for a separate action on which it did not prevail.

Regardless of the outcome of the forcible-detainer action, attorney services for obtaining possession of the premises from Kearney did not advance MNC's claim for damages "in this case." As we have discussed, MNC was entitled to terminate Kearney's right of possession because it defaulted on the lease by failing to timely pay all tax charges. However, in the present case, MNC did not seek to recover the $1,188.34 in outstanding tax charges or obtain possession of the premises; indeed, Kearney had vacated when MNC filed this suit. Rather, MNC seeks only the amounts that became due for the remainder of the lease term. Therefore, although termination of Kearney's right of possession was relevant to MNC's present claims for purposes of demonstrating that this fact did not release Kearney's obligations for the remainder of the lease term, these obligations did not result from the termination; Kearney was liable for the remaining rent and other charges pursuant to the terms of the lease irrespective of whether it occupied the premises.

Accordingly, MNC did not conclusively establish that the total amount of attorneys' fees requested were reasonable and necessary for prosecution of the present case. Further, because the jury awarded no fees based on the erroneous finding that MNC should recover only $1,188.34 in damages, a factfinder has not yet considered the amount of reasonable and necessary attorneys' fees to which MNC is entitled factoring in the total recovery of damages we have now ordered in this case. Therefore, we will remand for a new trial on attorneys' fees. *See Midland W. Bldg.*, 300 S.W.3d at 739–40 (reversing judgment relative to jury's awarding zero attorneys' fees in absence of

affirmative showing that no services were needed or services were of no value; but remanding for new trial on ground that amount of reasonable fees was not established as a matter of law because attorney's testimony indicated some fees were rendered for claims other than those against the defendant). We sustain, in part, MNC's second issue.

### III. CONCLUSION

We reverse the portion of the trial court's judgment ordering that MNC recover the principal sum of $1,188.34 in actual damages and render judgment that MNC recover the principal sum of $96,409.53 in actual damages from Kearney, L.L.C. and Vincent E. Kearney, jointly and severally.

We reverse the portion of the judgment awarding MNC no attorneys' fees and remand for a new trial on attorneys' fees.

We affirm the remainder of the judgment.


/s/    Charles W. Seymore
Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Boyce.

10