**OYSTER CREEK FINANCIAL CORP. and Alfred J. Antonini, Trustee, Appellants,**

v.

**RICHWOOD INVESTMENTS II, INC., Appellee.**

**Richwood Investments II, Inc., Appellant,**

v.

**Oyster Creek Financial Corp. and Alfred J. Antonini, Trustee, Appellees.**

No. 01–02–00788–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 12, 2004.

Gary L. McConnell, Horseshoe Bay, TX, for Appellant.

Barry Allan Brown, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

The Oyster Creek Financial Corporation (Oyster Creek) and Alfred J. Antonini, Trustee (Antonini), appellants and cross-appellees, appeal the jury's verdict in favor of Richwood Investments II, Inc. (Richwood), appellee and cross-appellant, in a suit on a note, a usury counterclaim, and mutual claims for attorney's fees. The parties tried the case once with a verdict also favoring Richwood, but the Amarillo Court of Appeals reversed and remanded. On retrial, after applying a $750,000 settlement credit and computing pre-judgment interest, the trial court rendered judgment to Richwood for $176,263.83, together with post-judgment interest in the amount of $86.92 per day.

We conclude that (1) the trial court did not abuse its discretion in the admission of evidence; (2) legally and factually sufficient evidence supports the jury's findings in favor of Richwood; (3) the jury's failure to find in favor of Oyster Creek and Antonini on their claims is not against the great weight and preponderance of the evidence; (4) the jury's answers are not irreconcilable; (5) the trial court did not err in calculating pre-judgment interest, based upon the findings Richwood obtained; (6) the trial court did not err in applying a settlement credit to the jury's verdict; and (7) the trial court correctly rendered judgment against Antonini in his capacity as trustee. We therefore affirm.

## The Facts

Antonini borrowed $900,000 in a promissory note dated June 17, 1988. Richwood is a subsequent holder of the note. Oyster Creek is a company owned, at least in part, by Antonini. At issue in this case is the amount of interest and attorney's fees

owed on the note, and the manner in which Richwood should calculate such costs.[1] Antonini borrowed the $900,000.00 from the Columbia Savings & Loan Association (Columbia), for the purchase and renovation of a 256 unit apartment complex in Brazoria County, Texas. In connection with the loan, Antonini executed a deed of trust and a security agreement covering the apartments. The note provides for the payment of interest at a variable rate, and for quarterly "interest only" payments for the first two years. Beginning July 16, 1990, the note's principal and interest became payable in monthly installments on the 16th day of each month until June 16, 1993, when the entire amount then unpaid became due.

Before Antonini paid the note in full, Columbia failed. Following its demise, the Resolution Trust Corporation assigned the note and deed of trust to the Bank of America National Trust & Savings Association (Bank of America). In October 1991, Antonini ceased making payments on the note, placing it in default. Antonini remained in default for over two years. In February 1994, Bank of America engaged BEI Management, Inc. (BEI), to act as a debt servicer for the note. In March 1994, BEI's asset manager, Anthony Felker, inquired into the note's payment status, repayment prospects, and the condition of the apartments — the collateral on the note. In response to Felker's inquiries, and to improve his prospects of purchasing back his note at a deep discount, in April 1994, Antonini informed Felker that the apartments were in bad condition, the taxes had not been paid, and that he was broke and near judgment-proof.

Previously, in March 1993, Elaine Knight, Richwood's president, had offered to buy the apartments from Antonini for

$1.6 million, but he refused to sell. In early 1994, however, Knight learned the apartments were subject to foreclosure, and she contacted Felker to explore whether Richwood could acquire the apartments by purchasing the note and deed of trust. In March 1994, Felker offered to sell the note to Richwood for $1.17 million. Richwood declined to purchase it at that time.

Meanwhile, in December 1993, Antonini sold the apartments to a third party for $3.7 million. In May 1994, the apartments were sold for $3.72 million to Oyster Creek. In March 1994, unbeknownst to BEI and the Bank of America, Antonini and Oyster Creek borrowed $5 million from the Southeast Texas Housing Finance Authority, and secured it with a second lien on the apartments. The Service Title Company withheld $1,040,000 of the loan amount in escrow for the first lienholder, the Bank of America, but did not remit the funds to the Bank of America at that time.

In a letter dated July 11, 1994, attorneys for Bank of America notified Antonini of his default, and announced a private foreclosure sale under the deed of trust. The notice advised Antonini that as of March 31, 1994, he owed a balance of $1,233,270.08, including $890,841.14 in principal and $342,428.94 in unpaid interest, accruing at a per diem of $358.81. On July 14, 1994, before the scheduled date of foreclosure, BEI sold the note and deed of trust to Richwood for $1.17 million.

Richwood's asset sale agreement provided that it acquired "any and all claims able to be assigned" by Bank of America. Richwood thereafter entered into a 25% contingency fee agreement with legal counsel to enforce the note and foreclose

---

1. In their briefs, the parties rely on the facts as stated in *Oyster Creek Fin. Corp. v. Rich-* *wood Inves., II, Inc.,* 957 S.W.2d 640 (Tex. App.-Amarillo 1997, pet. denied).

on the apartments. In a July 25, 1994 letter, Richwood's counsel notified Antonini that Richwood had purchased the note, and planned to proceed with the previously noticed private foreclosure on August 2, 1994.

On August 1, 1994, one day before the scheduled private foreclosure, Antonini met with Knight and Barry Brown, Richwood's attorney. At the meeting, Antonini offered to purchase the note for $25,000.00 over Richwood's cost, but Richwood rejected his offer. Instead, Brown presented Antonini with an unitemized written demand for $1,637,015.00 ("the August 1 demand letter"). Antonini pointed out that Richwood's demand exceeded the amount Bank of America had demanded. According to Antonini, Brown responded that BEI and Bank of America used the wrong post-maturity interest rate to calculate the amount owed on the note. Brown did not present any interest calculations, however, and Antonini declined to tender the new amount claimed to be due.

Oyster Creek, Antonini, and U.S. Trust Company of Texas (U.S.Trust) as trustee, then filed two separate lawsuits seeking a temporary restraining order to avoid the imminent foreclosure under the deed of trust. Service Title Company, which had held the $1,040,000.00 in escrow to protect Bank of America as the first lienholder, tendered a check into the court's registry, payable to Richwood, in the amount of $1,040,000.00. On August 2, 1994, the trial court entered a temporary restraining order, prohibiting Richwood from conducting the private foreclosure. The parties later agreed to extend the temporary restraining order, via an agreed injunction, pending trial on the merits.

The trial court consolidated the two actions. In the consolidated suit, Antonini alleged that Richwood had made an "excessive demand," and had charged him usurious interest, thus excusing portions of the interest and all the attorney's fees Richwood claimed to be owed on the note. In particular, Antonini claimed that Richwood charged usurious interest by disguising interest as attorney's fees. In response, Richwood counterclaimed against Oyster Creek, Antonini, and U.S. Trust for principal, interest, and collection related attorney's fees due under the note, and added claims in tort. Richwood also sued Service Title Company, and the United General Title Insurance Company (United General). United General had insured title as to U.S. Trust's second lien on the $5,000,000 note Antonini had obtained from the Southeast Texas Housing Financing Authority. Richwood and United General disputed which lien had priority. In an amended pretrial order, the trial court severed all parties except Antonini, Oyster Creek, Richwood, its attorney, and its substitute trustee, appointed to conduct the private foreclosure.

Four days before the first trial, Antonini and Oyster Creek subpoenaed Brown, Richwood's attorney, to compel him to produce the principal, interest, and attorney's fees calculations that formed the basis of Richwood's August 1 demand letter. Richwood asserted an attorney work product privilege. The trial court agreed, and granted Richwood's motion to quash. The first jury favored Richwood on its claims, and the trial court awarded it $567,477.15, plus post-judgment interest. The Amarillo Court of Appeals reversed, however, concluding that Richwood's attorney's handwritten calculations of principal and interest did not constitute attorney work product, and that the error was harmful. *Oyster Creek*, 957 S.W.2d at 648. The court of appeals remanded the case for a

new trial.[2]

The jury in the second trial found Antonini liable for $890,841.14 in principal. In addition, it awarded: (1) $198,824.17 in accrued interest; (2) a per diem of $537.369 in daily interest; and (3) $327,630.97 in attorney's fees. The jury further found that Richwood did not charge usurious interest or unreasonable attorney's fees. Finally, the jury found that Richwood did not make an excessive payment demand to Antonini. In post-verdict proceedings, Antonini contended that the judgment should reflect a settlement credit based on agreements between Richwood and United General. The trial court agreed, and after applying a settlement credit of $750,000 and the $1,040,000 tendered to the court registry, it rendered judgment that Richwood recover $176,263.83, plus post-judgment interest.

Antonini appeals the jury findings. Antonini contends that: (1) the trial court abused its discretion in admitting evidence of Antonini's criminal fraud conviction; (2) the trial court abused its discretion in admitting Antonini's testimony from the first trial; (3) the trial court abused its discretion in admitting evidence of other judgments, tax liens, and pending lawsuits against Antonini; (4) the jury's finding of no excessive demand is against the great weight and preponderance of the evidence; (5) the trial court erred in awarding prejudgment interest and attorney's fees, because Antonini had made an effective tender; (6) the jury's award of $327,630 in attorney's fees is unreasonable, excessive, and factually insufficient evidence supports it; (7) the trial court erred in overruling Antonini's judgment notwithstanding the verdict, because Richwood charged usurious interest as a matter of law; or alterna-

tively, the jury's failure to find that Richwood charged usurious interest is against the great weight and preponderance of the evidence; and (8) the jury's answers are in fatal conflict with each other.

Richwood also appeals, contending that the trial court erred in its (1) prejudgment interest calculation; (2) application of the settlement credit; and (3) rendition of judgment against Antonini solely in his capacity as trustee, rather than both individually and in his capacity as trustee.

## The Evidentiary Matters

### Standard of Review

The admission and exclusion of evidence is committed to the trial court's sound discretion. *Moore v. Bank Midwest, N.A.,* 39 S.W.3d 395, 401 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

### The Admission of the Conviction

Antonini did not attend the second trial because, at the time, he was incarcerated in a California federal prison for bank fraud. Richwood offered Antonini's testimony from the first trial, and then moved to admit Antonini's felony conviction to impeach the credibility of this testimony. Antonini contends that the trial court abused its discretion in admitting evidence regarding his conviction and incarceration.

In admitting Antonini's conviction, the trial court observed that Antonini's counsel "opened the door," by stating during voir dire that Antonini lives in California and could not attend the trial. Antonini's counsel made no objection to the "opening the door" ruling. Rather, Antonini's counsel stated, "I object on the grounds previously stated," but the record contains no statement by the court or counsel as to the

---

**2.** The court of appeals affirmed the jury's no liability finding as to Richwood's claims against Oyster Creek, and the no liability find-

ing as to Antonini's fraud claim against Richwood, and severed them from the judgment. *Oyster Creek,* 957 S.W.2d at 650.

substance of the objection. In admitting the conviction, the trial court allowed counsel a running objection. The running objection apparently stems from an earlier off-the-record discussion in chambers that the parties were not to divulge the conviction before approaching the bench.

■ On appeal, Antonini contends that Rules 404(b) and 609 of the Texas Rules of Evidence preclude admission of his conviction. To preserve error for appeal, however, Antonini must have made a timely, specific objection at the earliest possible opportunity. Tex.R.App. P. 33.1. Failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. *Atlantic Richfield Co. v. Misty Prods., Inc.,* 820 S.W.2d 414, 421 (Tex.App.-Houston [14th Dist.] 1991, writ denied). A discussion of matters in limine off-the-record is insufficient to preserve an evidentiary ruling for review. *See Tex. Capital Sec. Inc. v. Sandefer,* 58 S.W.3d 760, 770 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Antonini therefore did not preserve his complaint for appellate review.

■ Moreover, Antonini's former trial testimony involved an important issue in the case — usurious interest. Antonini alleged that Richwood charged him usurious interest based upon a conversation he had with Brown regarding the August 1 demand letter, and Antonini thus placed his credibility squarely at issue. Although we disagree that the mere mention of an absent party's whereabouts opens the door to the admissibility of a conviction, we nevertheless conclude that the conviction here is admissible, where the party's credibility as a witness is at issue. *See* Tex.R. Evid. 609. If a trial court properly admits evidence, we uphold its ruling on any permissible ground. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998).

■ Antonini further contends that the trial court should have confirmed its ruling on the admissibility of his conviction before voir dire, so that he could question prospective jurors about any bias they may have as a result of his conviction. Antonini contends that the trial court's later ruling admitting the conviction violates his due process rights. Antonini, however, did not seek a definitive ruling before trial regarding the conviction, nor did he complain in the trial court that to admit the conviction after an off-the-record limine order violated his due process rights. Like his primary complaint about admitting the conviction, his complaint as to the timing of the trial court's ruling has not been preserved for appeal. Tex.R.App. P. 33.1. *Former Testimony*

Antonini contends that the trial court abused its discretion in admitting his trial testimony from the first trial of this case. Antonini objects that Richwood did not prove that Antonini was unavailable pursuant to Rule 804, and Richwood had not shown due diligence in attempting to secure Antonini's attendance at trial. *See* Tex.R. Evid. 804. Richwood responded that an incarcerated witness confined in a California prison is outside the subpoena power of the trial court. The trial court heard evidence outside the presence of the jury that Antonini was serving a 60–month sentence in a federal penitentiary in California, and concluded that Antonini was unavailable. The trial court also found that any efforts to use due diligence would have been fruitless, because "they won't release anyone from a prison for testimony in a civil case."

■ Antonini argues that his prior trial testimony is hearsay, and Richwood did not satisfy the Rule 804(b)(1) hearsay exception for former testimony. If a declarant's statement is not hearsay, however,

then no hearsay exception is needed to admit the statement, and Rule 804(b)(1) is irrelevant. *Kemmerer v. State,* 113 S.W.3d 513, 518 (Tex.App.-Houston [1st Dist.] 2003, no pet.). If the record discloses a legitimate basis for a trial court's evidentiary ruling, we uphold the ruling. *See Owens–Corning Fiberglas,* 972 S.W.2d at 43.

■ Richwood offered Antonini's former testimony, or in other words, his own statements about the note transaction — in particular, the events surrounding Richwood's August 1 demand. Rule 801(e)(2) provides that statements by a party opponent are not hearsay if offered against a party, and they are the party's own statement in either an individual or representative capacity. TEX.R. EVID. 801(e)(2)(A); *Worley v. Butler,* 809 S.W.2d 242, 245 (Tex.App.-Corpus Christi 1990, no writ). Here, the statements at issue are those of a party, and Richwood offered them as testimony in the same lawsuit. We therefore conclude that Antonini's former trial testimony is not hearsay, but is an admission by a party opponent, and as such, the Texas Rules of Evidence do not require the trial court to have found Antonini unavailable as a preliminary condition to admitting his testimony. *See* TEX.R. EVID. 801(e)(2). Accordingly, the trial court did not abuse its discretion in admitting Antonini's prior trial testimony.

*The Evidence of Judgments, Tax Liens, and Pending Lawsuits*

Antonini contends that the trial court abused its discretion in admitting evidence of extraneous judgments, tax liens, and pending lawsuits against him. To prove that its request for attorney's fees was reasonable, Richwood offered exhibit 19, a letter that Antonini wrote and sent to BEI, in which he discusses his deteriorating financial condition. To his letter, Antonini attached an IRS audit letter, a credit history report, a notice of a tax lien, and a list of over 50 lawsuits or claims, thirteen of which include Antonini as a party.

After Richwood offered exhibit 19, Antonini's counsel responded that the evidence was not relevant, and only offered to impeach a witness — Antonini — who was not present. The trial court overruled the objection, and admitted the evidence to show Knight's state of mind when she agreed to a 25% contingency fee contract for collection services on the note. Knight testified that exhibit 19 forewarned her that the note would be difficult to collect and would take a great deal of attorney hours.

■ On appeal, Antonini contends that the evidence was inadmissible based on Rules 404(a)-(b) and 405(b) of the Texas Rules of Evidence. Here, we conclude that the trial court did not abuse its discretion in admitting the evidence. A main issue at trial was whether Richwood's attorney's fees are reasonable. The trial court determined that exhibit 19 was admissible to show Knight's state of mind when she agreed to a 25% contingency fee contract. Because the jury had to determine attorney's fees, and their necessity and reasonableness were disputed, the trial court did not abuse its discretion in admitting evidence of Antonini's course of conduct during the pendency of the underlying note, including his own efforts to convince the note-holder that he was judgment proof. Such evidence is relevant to the jury's determination of whether Richwood was justified in agreeing to a 25% contingent fee.

## Legal and Factual Sufficiency Claims

*The Excessive Demand Finding*

Antonini contends that Richwood's August 1 demand is excessive as a matter of

law, or alternatively, that the jury's failure to find that Richwood made an excessive demand is against the great weight and preponderance of the evidence. Antonini attacks the legal and factual sufficiency of an adverse jury finding on which he has the burden of proof, and thus he must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue (for rendition), or alternatively, that the jury's adverse finding is against the great weight and preponderance of the evidence (for remand). *Vickery v. Vickery*, 999 S.W.2d 342, 375 (Tex.1999); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). In reviewing a claim that the evidence conclusively establishes liability as a matter of law, we consider evidence and inferences supporting the jury's finding, and ignore all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In reviewing a claim that the verdict is against the great weight and preponderance of the evidence, we consider and weigh all of the evidence, and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

■■■ Generally, a creditor who makes an excessive claim upon a debtor is not entitled to attorneys' fees for subsequent litigation required to recover the debt. *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981). A demand is not excessive, however, simply because it is greater than that which a jury later determines is actually due. *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 169 (Tex.App.-Houston [1st Dist.] 1996, no writ). Although this may be some evidence of an excessive demand, it is not the only factor to consider, particularly if the amount due is unliquidated. *Id.* Thus, a claimant is not required to present the exact amount it is entitled to recover at trial. *Id.* at 169. The dispositive question in determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith. *See Findlay*, 611 S.W.2d at 58; *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 627–28 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

■■■ Antonini contends that Richwood made an excessive demand, despite the jury's finding to the contrary, because Richwood's initial demand of $1,637,015 is approximately $220,000 more than the jury's ultimate award. Relying on *Findlay*, Antonini suggests that Richwood's August 1 demand for more money than the jury eventually awarded is evidence of bad faith as a matter of law. *See Findlay*, 611 S.W.2d at 58.

Antonini misstates the holding in *Findlay*. *Findlay* recognizes that "any claim for an amount appreciably greater than that which a jury later determines is actually due ... may indeed be some evidence of excessive demand," but such a result does not establish excessive demand as a matter of law. *Findlay*, 611 S.W.2d at 58. Indeed, our court has held that a demand is not excessive simply because it is greater than that which a jury later determines is actually due. *Panizo*, 938 S.W.2d at 169. Rather, the dispositive question is whether Richwood acted unreasonably or in bad faith. *See id.*

Richwood's expert, Patrick Cantrell, testified that principal and interest due on August 1 was $1,310,524.05. By that time, Richwood also had entered into a 25%

contingency attorney's fee agreement for collection of the sums owed on the note. Using his principal and interest amount, Cantrell multiplied it by 25% to calculate $327,631.01 due in attorney's fees. The principal, interest, and attorney's fees total $1,638,155.06. The jury awarded $890,841.14 in principal, $198,824.17 in accrued interest, plus a per diem of $537.369 in daily interest, and $327,630.97 in fees. As discussed below, the difference between the August 1 demand and the jury's award lies with applicability of the per diem daily rate, and Richwood's failure to obtain specific prejudgment interest jury findings. As Richwood offered expert testimony at trial to support a demand that is higher than it actually made on August 1, we cannot conclude that the jury's finding that Richwood did not make an excessive demand is insupportable as a matter of law. The expert's calculations undercut Antonini's claim that Richwood acted unreasonably or in bad faith as a matter of law. *See id.*

In his great weight and preponderance of the evidence challenge, Antonini does not direct us to any evidence in the record that demonstrates Richwood's bad faith, other than his contention that the jury's finding is less than Richwood's initial demand. Based on our review of the appellate record, we cannot conclude that Richwood's conduct in making its initial demand of $1,637,015.00 and subsequently receiving a jury award in a lesser amount — $1,417,296.28 — alone means that the jury's finding is against the great weight of the evidence.

Gary McConnell, Antonini's expert, testified regarding Antonini's claim for excessive demand on August 1. McConnell testified that Richwood's demand included $597,355 that he would categorize as interest, and thus it included an overcharge of $359,025. As Cantrell testified to the jury, however, McConnell's testimony ignored Richwood's claim for attorney's fees, also included in the August 1 letter. The jury was free to disbelieve McConnell's opinion of excessive demand, and to credit Cantrell's opinion that the letter includes claims for principal, interest, and attorney's fees — the latter amount not included as part of McConnell's analysis. Cantrell's testimony is some evidence to support the jury's conclusion that Richwood's demand was not excessive.[3] Accordingly, Antonini has not shown that the jury's finding of no excessive demand is against the great weight and preponderance of the evidence.

*The "Effective Tender"*

Antonini contends that the trial court erred in awarding prejudgment interest and attorney's fees to Richwood because he made an effective tender on August 2, 1994.[4] Antonini contends that the May 28,

---

3. A 25% contingent fee demand for attorneys fees, included in the overall demand of the note, might be excessive, if it is not otherwise justified under Texas Disciplinary Rule 1.04(b). Here, however, the jury had the benefit of evidence of Antonini's course of conduct with regard to the note, a litigious history indicating difficulties in collection, and Antonini's own representation that the note was uncollectible. In addition, expert testimony supported the amount of the fee under Texas Disciplinary Rule 1.04(b). Moreover, the language of the note requires that attorney's fees are owed at the time the note is delivered to an attorney for collection. In such circumstances, we defer to the jury's conclusion that Richwood's demand, including a demand for attorney's fees, was not excessive.

4. Antonini cites two cases for the proposition that an effective tender relieves him of the obligation to pay interest and attorney's fees. *See Staff Indus., Inc. v. Hallmark Contracting, Inc.,* 846 S.W.2d 542, 548–49 (Tex.App.-Corpus Christi 1993, no writ); *Thomas v. Thomas,* 917 S.W.2d 425, 438 (Tex.App.-Waco 1996, no writ).

2002 judgment reflects that Antonini owes $521,010.93 in prejudgment interest and $327,630.00 in attorney's fees. Antonini contends he deposited $1,280,000.00 into the trial court's registry after Richwood made its demand. Antonini therefore argues that he should not have to pay interest or attorney's fees that accrued on the note after he effectively tendered the money on August 2, 1994.

◼◼◼ A tender is an unconditional offer by a debtor to pay another a sum not less in amount than that due on a specified debt. *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex.1963). A valid and legal tender of money consists of the actual production of the funds to pay the debt involved. *Id.* The tenderer must relinquish possession of the funds under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire possession. *Id.* As a general rule, a tender of payment must include everything to which the creditor is entitled; any less sum is ineffective. *Collision Ctr. Paint & Body v. Campbell*, 773 S.W.2d 354, 357 (Tex.App.-Dallas 1989, no writ). The burden of proving a valid tender is on the party asserting it. *Bray v. Cadle Co.*, 880 S.W.2d 813, 818 (Tex.App.-Houston [14th Dist.] 1994, no writ).

◼◼◼ Antonini did not request a jury issue on his defense of effective tender. Whether Antonini effectively tendered the full amount due was a fact question and

required a jury finding. *See* Tex.R. Civ. P. 273. The trial court in fact refused Richwood's requests for questions and instructions regarding effective tender, to which Antonini did not join. Because Antonini failed to request a jury question on this issue, the complaint is waived. Tex.R. Civ. P. 279; *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).[5]

### The Attorney's Fees Verdict

Antonini contends that the jury's award of $327,630.00 in attorney's fees is excessive and requests that we suggest a remittitur. In addition, Antonini contends that the jury's finding that Richwood did not charge unreasonable attorney's fees is contrary to the great weight and preponderance of the evidence. Antonini further argues that the jury's finding of reasonable attorney's fees in favor of Richwood is factually insufficient.

◼◼◼ An attorney's fee award may be challenged for the sufficiency of the evidence to support the award. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991). In order to show the reasonableness and necessity of attorney's fees, a plaintiff must show that it incurred the fees while suing the defendant, on a claim allowing recovery of such fees. *Id.* at 10. We review the factual sufficiency of the evidence under the standards discussed above. Antonini contends that

---

5. Antonini cites to the trial court's docket sheet. It states, "8/2/94: TRO to issue upon posting of $7500 bond plus deposit of $1,280,000 into court's registry." The appellate record does not affirmatively state who made the tender, if any, or in what amount. Richwood's August 1 demand letter asked Antonini to pay $1,637,015, while Antonini alleges that he deposited $1,280,000 into the trial court's registry. Moreover, Antonini's calculation of the amount owed $1,280,583.79 exceeds the $1.28 million tender by $583.79.

Richwood contends that, even assuming Antonini deposited $1,280,000, it was not effective to discharge his burden of having to pay interest on the sum due. *Baucum*, 370 S.W.2d at 866; *Houston Lighting & Power Co. v. Dickinson Indep. Sch. Dist.*, 641 S.W.2d 302, 308 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). The evidence thus raises a fact issue regarding tender, and Antonini cannot satisfy his burden to prove the defense of effective tender as a matter of law.

Richwood's attorneys spent 32 hours in collecting the note before Antonini filed his lawsuit.[6] Based on 32 hours of actual time spent collecting the note, Antonini calculates that the jury's award amounts to over $10,000 per hour in attorney's fees, an amount unreasonable as a matter of law.

 Richwood sought attorney's fees for collection work that not only occurred on or before August 1, but also presented evidence to claim fees for the numerous additional hours its attorneys expended in trying to collect on the note, after Antonini filed suit, and had requested and received a TRO — including the first trial, an appeal, and the second trial. Contrary to Antonini's argument, Richwood did not seek attorney's fees solely for collection efforts on or before August 1.

The note Richwood purchased from Bank of America specifically provides that the maker (Antonini, Trustee) is liable for collection-related attorney's fees. The provision in the note regarding attorney's fees states, "If the note is collected by suit ... or any other judicial proceedings ... and is placed in the hands of an attorney for collection, then the Maker promises to pay, reasonable attorneys' fees in addition to all other amounts owing hereunder, at the time this Note is placed in the hands of such attorney ...." Sarah Powers, one of Richwood's attorneys, thus testified that attorney fees are to be included in the demand. Richwood signed a contingency contract with its attorneys to collect the note. The contract provided that Richwood would pay 25% of the principal and interest collected on the note.

In determining whether a request for attorney's fees is reasonable, a factfinder may consider a contingency fee contract, but must also consider the factors articulated in the Rules of Professional Conduct governing fees. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex.1997); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998); *see Aquila*, 48 S.W.3d at 240–41 (applying factors to breach of contract claims). A party must prove that the amount of fees incurred was both reasonable and necessary to the prosecution of the case, and must ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment. *Arthur Andersen*, 945 S.W.2d at 819.

The jury heard extensive testimony concerning the factors listed in section 1.04(b) of the Texas Disciplinary Rules of Professional Conduct, and the reasons for entering into a contingency fee agreement in this case. Specifically, Knight testified that exhibit 19, in which Antonini represented that the note was uncollectible, and that he was litigious with respect to similar transactions, influenced her decision regarding a reasonable attorney's fee for collection of the note. To collect from Antonini, she knew that court intervention was necessary. She expressed concerns that Antonini might place the property in bankruptcy to prevent foreclosure. She was also aware of a second mortgage on the property that Antonini and Oyster Creek had executed before Richwood purchased the note. She testified that the contingent fee agreement was reasonable, based on her appreciation of the facts.

Barry Brown, Richwood's attorney in the second trial, testified that his compensation will "depend both on the amount of the judgment and my ability to collect it." He expected resistance in collection because — "somebody like Mr. Antonini and circumstances as this one where there were conflicting senior liens." Brown also

---

6. The law firm's bill charged $5,530.00 for 32.35 hours.

testified to the factors in section 1.04. Brown testified that various factors made collection seem uncertain. He referred to exhibit 19 and the $5 million second mortgage. He also testified to viewing loan portfolios involving Antonini's other entities. He recognized that the same issues asserted in this case were arising in cases involving other Antonini loans.

Brown calculated that in the first Antonini suit, the appeal, the U.S. Trust litigation, and the second trial, he worked approximately 1,200 hours. He testified that his hourly rate of $300 is a reasonable rate for Harris and Brazoria County. In 1994, his hourly rate was $250 per hour. He testified that the legal issues in this case are complicated. Brown stated that taking this case precluded employment by other clients. In another case with similar issues, he charged a contingency fee of 33 1/3 %. He testified that his contingency fee is on the low end of reasonable and that it could have been more.

Sarah Powers, Richwood's attorney when Knight bought the note, testified that the contingency fee agreement of 25% was on the lower end of contingency fee arrangement contracts for note collections. Based on the provisions in the note, she was concerned about litigation. She testified that the note's terms made it necessary for her to determine attorney's fees at the beginning, as opposed to waiting until after all the litigation was over. She also realized that collection would involve a long, expensive process. She opined that the fee agreement was reasonable.

Antonini adduced evidence that Richwood's request for fees was excessive. McConnell, Antonini's expert, testified that in his opinion, a 25% contingency fee for the work that had been completed as of August 1, 1994 was not reasonable, because only 32 hours had been completed as of August 1. A reasonable fee instead would be $6,470. Thus, the jury heard conflicting evidence as to the appropriate amount of fees.

▮ The trial court instructed the jury on the factors to consider in awarding attorney's fees. Absent any indication to the contrary, we assume that a jury follows the trial court's instructions. *Harris County v. Smith*, 96 S.W.3d 230, 237 (Tex. 2002). Based on the evidence presented on the reasonableness of the attorney's fees, we conclude that the jury did not award unreasonable or excessive fees. Moreover, the evidence is factually sufficient to support the amount of attorney's fees the jury awarded.

### The Usury Verdict

Antonini contends that the trial court erred in overruling Antonini's motion for judgment notwithstanding the verdict, because Richwood's written demand constituted usury as a matter of law. Alternatively, he contends that the jury's finding that Richwood did not charge usurious interest is against the great weight and preponderance of the evidence.

The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is to determine whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). If so, then the trial court erred in denying the motion for judgment notwithstanding the verdict. *Id.* On review, this court considers the evidence and inferences tending to support the trial court's decision, and disregards evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002).

▮ A usurious transaction is: (1) a loan of money; (2) with an absolute obli-

gation to repay the principal; and (3) the exaction of greater compensation than that allowed by law for the borrower's use of the money. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994). "Interest" means compensation for the use, forbearance, or detention of money. TEX. FIN.CODE ANN. § 301.002(a)(4) (Vernon Supp.2004). "Usurious interest" is interest that exceeds the applicable maximum amount allowed by law. *Id.* § 301.002(a)(17) (Vernon Supp.2004). Usury statutes are penal in nature and should be strictly construed. *Tony's Tortilla*, 877 S.W.2d at 287.

Whether an amount of money is interest depends not on what the parties call it, but on the substance of the transaction. *First USA Mgmt., Inc. v. Esmond*, 960 S.W.2d 625, 627 (Tex.1997). Not every obligation on a borrower in connection with a loan is interest. *Id.* For example, fees that are an additional charge, supported by distinctly separate and additional consideration, are not interest and thus do not violate the usury laws. *Id.* Courts examine the form of the transaction and its substance in determining the existence or non-existence of usury. *Gonzales County Sav. & Loan Assn. v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976). A court will not hold a contract in violation of usury laws unless, upon reasonable interpretation of all terms, the lender intended to charge more interest than allowed by the law. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980).

Any dispute in the evidence as to whether a charge in addition to interest is actually for an additional consideration raises a fact issue. *Tex. Commerce Bank– Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984). If the facts are undisputed, however, courts have determined as a matter of law whether a charge is additional interest for the lending of money or is for

separate, additional consideration. *Id.* (holding that attorneys' service, consideration in addition to lending money, was not interest); *Tony's Tortilla*, 877 S.W.2d at 287–88 (holding as a matter of law that bank's fees were not interest).

Antonini contends that Richwood employed usury on the basis of the jury's answers. He interprets the jury's findings to mean that the total amount owed to Richwood for principal, interest, and attorney's fees as of August 1, 1994 is $1,417,296. Antonini then reasons that Richwood's demand of $1,637,015 exceeded the amount lawfully due by almost $220,000. He concludes that the excess $220,000 can only be attributable to interest, at twice the legal rate, and therefore, that the transaction is usurious.

Richwood offered evidence at trial that it did not charge usurious interest. Richwood's expert, Patrick Cantrell, testified that on August 1, $1,310,524.05 was due. For missed payments, he calculated $35,689.11 in past due interest. He also determined that $220,858.74 was due on the balloon obligation from June 16, 1993 until August 1, 1994, based on 18% interest. He opined that the August 1 letter did not charge usurious interest, because the attorney's fees demanded were not interest, and Richwood's demand did not exceed the lawful rate.

Richwood also responds that Antonini's contention lacks merit, because it is entitled to an additional $220,858.65 in accrued interest between June 17, 1993 and August 1, 1994, and raises an issue on appeal to correct the judgment to reflect the proper calculation of prejudgment interest. Although we agree that evidence in the record exists to support such an award of additional interest, as discussed below, Richwood failed to obtain an affirmative jury finding to support that amount. The

failure to properly request an affirmative jury issue on interest for that time period, however, does not support a finding of usury as a matter of law.

In addition to Cantrell's testimony, Antonini ignores that Gary McConnell, Antonini's trial attorney from the first trial, calculated and testified to the jury that on August 1, 1994, principal and interest due on the note amounted to $1,280,583.79, and did not include attorney's fees. His testimony provides further support for the jury's finding because the jury awarded $327,630.97 in attorney's fees.

Brown testified that he charged interest at the maximum lawful rate, as allowed by the note. He then calculated that principal and interest equaled $1,310,000. This number included roughly $900,000 in principal and $400,000 in accrued interest. To the contrary, McConnell, Brown, and Cantrell's testimony support Richwood's contention that it did not charge usurious interest. We therefore conclude that Antonini has not established usury as a matter of law. In addition, this testimony provides sufficient evidence to support the jury's verdict that Richwood did not charge usurious interest, and thus the jury's finding is not against the great weight of the evidence.

*The Reconcilable Jury Answers*

Antonini contends that the trial court erred in overruling his motion for new trial because of irreconcilable conflicts between the jury's answers to questions regarding interest and usury. The standard of review of the denial of a motion for new trial is abuse of discretion. *Champion Int'l*

*Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ Antonini failed to preserve error on this issue when he failed to object to the purported conflict before the trial court discharged the jury. *See Coastal Chem, Inc. v. Brown*, 35 S.W.3d 90, 99 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860 (Tex.App.-Corpus Christi 1998, pet. denied); *Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 244 (Tex.App.-San Antonio 1996, writ denied); *see also* Tex.R. Civ. P. 295. Accordingly, the trial court did not abuse its discretion in denying Antonini's motion for new trial on this issue.[7]

## RICHWOOD'S ISSUES ON APPEAL

*The Prejudgment Interest Calculation*

Richwood contends that the trial court's judgment fails to include the proper amount of accrued interest. Specifically, it argues that the judgment erroneously omits interest from the period between June 17, 1993 — the note's maturity date — and August 1, 1994.

The trial court instructed the jury to answer with four different interest figures. The charge reads: (1) Principal balance; (2) Accrued interest; (3) Daily interest; and (4) Reasonable attorney's fees for col-

---

7. Moreover, Antonini's complaint merely mirrors the merits of his previous issues. The test is whether, considering one finding alone, a judgment should be rendered for the plaintiff while, considering the other finding alone, a judgment should be rendered for the defendant. *Transmission Exch. Inc. v. Long*, 821 S.W.2d 265, 274 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Antonini does not maintain that one finding mandates a judgment for the plaintiff, while another finding mandates a judgment for the defendant. After reviewing the findings, we conclude that there is no irreconcilable conflict.

lection of the note, together with the jury's answers. As the trial court read the verdict, it noted a "figure times a certain number of days and then you have got what I think is a total of that figure" in the space entitled "Daily Interest." The trial court returned the jury to the jury room to calculate a per diem interest, rather than a lump sum. None of the parties objected. After the jury returned, it found a daily rate of interest of $537.369, and crossed out the lump sum amount, as initialed by a member of the jury. Upon re-reading the verdict, Richwood offered no objection.

Based on these events, Richwood contends that the jury's originally calculated lump sum amount of $220,858.65 should have been included in the trial court's judgment, as this interest accrued is a simple calculation of the per diem multiplied by the dates for which the jury did not award interest in the first blank.

Richwood casts its complaint as a trial court error in rendering judgment. The trial court, however, merely rendered judgment based upon the jury's answers that it had received — without objection from Richwood. Richwood's real disagreement is instead one with the jury's *answer* to the charge Richwood offered. The charge asked the jury to determine the accrued interest "as of August 1, 1994," and did not distinguish between interest accrued pre- and post-default. The jury thus found that Antonini owed Richwood $198,841.14 in accrued interest *on August 1, 1994* — a time frame that includes the dates that Richwood now argues were excluded. Richwood did not object to the form of the jury issue. The trial court, in fact, submitted the issue that Richwood proposed.

■ Richwood now asks this court to reform the judgment to reflect an additional $220,858.65 [8] in accrued interest, based on the jury's per diem finding, for the dates it contends are not included in the computed interest — but dates that are included in the charge. For a disputed amount of damages — as the amount of interest owed on the note in this case surely was — we have no authority to employ additur. *See Pac. Coast Eng'g Co. v. Trinity Const. Co.*, 467 S.W.2d 635, 639 (Tex.Civ.App.-Houston [1st Dist.] 1971), *aff'd in part and rev'd in part*, 481 S.W.2d 406 (Tex.1972). To sustain Richwood's point, we would have to find that the amount of interest owed is established as a matter of law. *Id.*

■ Cantrell testified that from June 16, 1993 to August 1, 1994, Antonini owed $220,858.74 in interest. Richwood also offered two exhibits reflecting interest calculations as to the dates that Richwood contends the jury excluded. Exhibit 39 states that interest accrued between June 17, 1993 and August 1, 1994 (411 days) at 18% is $178,230.15. Exhibit 40 states that interest from the same dates, but counted at 410 days, is $178,230.15. Richwood's exhibit 43 states that interest due on delinquent payments calculated using default rate for June 17, 1993 through August 1, 1994 is $220,858.74. Antonini's exhibit 64 contended that the amount of interest owed was $238,330.73 as of August 1, 1994, but as a total amount of interest. The jury thus heard conflicting evidence about the amount of interest owed on the note. Richwood did not establish the correct amount of interest as a matter of law. *See Pac. Coast Eng'g*, 467 S.W.2d at 639. Although the evidence would have supported a finding of additional interest, Richwood's

8. Cantrell testified that the amount due for the period between June 16, 1993 and August 1, 1994 equaled $220,858.74.

complaint is one that can be corrected only by granting a new trial. *See Aztec,* 758 S.W.2d at 800. Richwood did not raise a factual sufficiency claim as to the jury's interest answer, and does not seek relief in the form of a new trial. We thus overrule its claim for additional interest.

*Settlement Credit*

Richwood contends that the trial court erred in applying a $750,000 settlement credit to the final judgment rendered in its favor. After the verdict, but before judgment, Richwood moved to dismiss with prejudice its claims against United General, based on a settlement in which United General paid Richwood $750,000. Five days later, Antonini moved to obtain a settlement credit. The trial court held a hearing on the issue. At the hearing, Brown admitted that Richwood and United General had executed a settlement agreement. The trial court ordered Brown to produce the document *in camera,* and after reviewing it, ordered Brown to produce it to Antonini. When asked whether the consideration for the settlement included a(1) release of the lien on the apartment property securing Richwood's note and (2) release of the claims made against United General, Brown replied, "Whatever the document says." Frank Oliver, attorney for United General, testified that part of the $750,000 went to the release of Richwood's lien, and part went to release his client from Richwood's counterclaims against it with prejudice. He also testified that United General bought a right to "participate" in the collections on the Antonini debt, as opposed to making a "payment" on the debt. Based upon this testimony, Antonini requested that the trial court apply the settlement credit under the one satisfaction rule.

The trial court applied the settlement credit to the judgment. As the trial court observed, after executing the settlement agreement, Richwood kept only an unsecured note, received $750,000, and no longer had any right to foreclose on the Brazoria property. Without the agreement, with the judgment and their lien, Richwood had a right to foreclose on the property. By releasing the lien and accepting the $750,000, Richwood gave up a right it had through the judgment.

On appeal, Richwood contends that the one satisfaction rule does not apply, because Richwood did not seek tort damages in the second trial. Antonini responds that (1) the settlement credit directly relates to rights Richwood asserts on the note; (2) Richwood claimed that United General owed Richwood money because of Richwood's interest in the note; and (3) Richwood accepted money in exchange for foregoing the security it held in connection with the note — in other words, Richwood is not entitled to two payments for the same note.

Neither party suggests a standard of review to apply to the trial court's decision to apply a settlement credit. As the trial court considered evidence regarding the character of the settlement, we conclude that an abuse of discretion standard of review applies. *Tex. Capital Sec. Inc. v. Sandefer,* 108 S.W.3d 923, 925 (Tex.App.-Texarkana 2003, pet. denied) ("A trial court's determination of the existence of, or the amount of, a settlement credit is reviewed for an abuse of discretion."); *see also Utts v. Short,* 81 S.W.3d 822, 829 (Tex.2002) ("[O]nce the nonsettling defendant presents evidence of the nonsettling plaintiff's benefit from a settlement, the trial court shall presume the settlement credit applies unless the nonsettling plaintiff presents evidence to overcome this presumption.").

We agree with Antonini that the one satisfaction rule prohibits a plain-

tiff from recovering twice for a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000); *Buccaneer Homes of Alabama, Inc. v. Pelis*, 43 S.W.3d 586, 589 (Tex.App.-Houston [1st Dist.] 2001, no pet.). This rule applies when multiple defendants commit the same act, or when multiple defendants commit technically different acts that result in a single injury. *Crown Life*, 22 S.W.3d at 390. Moreover, the absence of tort liability does not preclude the application of the one satisfaction rule. *See El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex.1993) (holding that one satisfaction rule does not allow plaintiff to recover from derivatively liable principal or alter ego when plaintiff has already received full settlement on his claim).

A nonsettling party seeking a settlement credit has the burden to prove its right to such credit. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex.1998). This burden includes proving the settlement credit amount. The nonsettling party can meet this burden by placing the settlement agreement or some evidence of the settlement amount in the record. *Id.* If the nonsettling party meets this burden, the burden shifts to the plaintiff to tender a valid settlement agreement allocating the settlement between (1) damages for which the settling and nonsettling defendant are jointly liable, and (2) damages for which only the settling party was liable. *Crown Life*, 22 S.W.3d at 392. If the plaintiff cannot satisfy this burden, then the nonsettling party is entitled to a credit equaling the entire settlement amount. *Ellender*, 968 S.W.2d at 928; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex.1991).

During the post verdict hearing, Antonini satisfied his burden by placing the settlement agreement in evidence. The burden then shifted to Richwood to show an allocation between damages for which only the settling party was liable. We conclude that the trial court did not abuse its discretion in deciding that Richwood did not meet its burden.

Richwood testified that the consideration for the settlement was both a release of its lien on the property and a release of any and all claims made against United General in Richwood's counterclaims. The settlement agreement contained a "participation agreement," providing that United General would receive 50% of any collections on Richwood's judgment against Antonini, after costs and other fees were discounted. Attorneys for Richwood and United General each testified that United General was not making a "payment" on the note, but merely paying for a "participating interest," a release of a lien, and a release of all claims. This contention ignores the fact that, as part of the consideration for payment, the agreement included a release of the lien Richwood asserted based on rights afforded it through Antonini's note.

Richwood contends that its injury with regard to Antonini is based on contract. United General, it asserts, caused a different injury — insuring a lien, arguably one which did not have priority over Richwood's lien. Thus, Richwood contends that United General and Antonini did not act as "joint tortfeasors" of any sort. Richwood relies on *Vogel v. Cent. Tex. Sec. Corp.*, 62 S.W.2d 243 (Tex.Civ.App.-Austin 1933, writ ref'd) and *Hendon v. Glover*, 761 S.W.2d 120 (Tex.App.-Beaumont 1988, writ denied), to support its position that the one satisfaction rule does not apply because United General and Antonini do not have joint liability.

In *Vogel*, Central Texas brought an action against Vogel on two paving certificates which had been issued to a paving

contractor, who assigned them back to the city, which then assigned them to Central Texas. 62 S.W.2d at 244. Vogel had refused to execute a mechanic's lien on his abutting homestead property to secure the cost of the paving. *Id.* The contractor notified the city that because of Vogel's refusal, he would skip repaving the portion of the street abutting Vogel's property. *Id.* The city wanted the street completely paved, and so it agreed to issue paving certificates upon completion of the work to the contractor, who would immediately have the certificates reassigned to the city. *Id.* The city then would pay the contractor for the paving and proceed against Vogel to collect on the certificates to reimburse the city. *Id.* Once the contractor finished the paving, the city assigned its rights against Vogel to Central Texas. *Id.* Vogel argued that the city discharged his liability for the certificates when it paid the contractor. *Id.* at 245.

The Austin Court of Appeals disagreed, because the evidence was undisputed that the city's payment was *involuntary* and not made to discharge Vogel's burden. *Id.* Rather, the agreement between the city and the contractor provided that the city would proceed against Vogel for collection. *Id.*

In *Hendon v. Glover,* the plaintiffs brought suit against the defendant for payment on a note. 761 S.W.2d at 121. After the jury returned a favorable verdict for the plaintiff, the defendant appealed, contending that he was entitled to a credit of $50,000 received by the plaintiff from a third party so that drilling operations could continue. *Id.* at 122. The court of appeals held that the operations agreement between the plaintiffs and the third party was completely separate and did not involve the defendant. *Id.* at 123.

Each of these cases is distinguishable from the facts of this case. Neither of these cases involve a settling party to the lawsuit. Rather, both cases involve third parties who the plaintiff had never sued. In this case, potential liability existed for both United General and for Antonini. Although the causes of action against Antonini and United General are different, they resulted, at least in part, in a single injury to Richwood-the impairment of its rights under a single note and accompanying lien. *See Cohen v. Arthur Andersen, L.L.P.,* 106 S.W.3d 304, 310 (Tex.App.-Houston [1st Dist.] 2003, no pet.). In *Cohen,* the plaintiffs sought damages allegedly caused by one defendant from another defendant, who also allegedly caused the damages. The plaintiffs settled with one of the defendants for an amount exceeding the total claimed damages. The other defendant moved for summary judgment, contending that the plaintiffs' damages had been satisfied by the first settlement. The trial court granted the motion, and this court affirmed, holding that, "Although the causes of action alleged are technically different, they resulted in a single injury, loss of trust assets." *Id.*

The same can be said for the damages at issue here. Antonini's failure to pay the note allegedly caused damages to Richwood. Richwood further alleged that United General was liable for damages due under the note. These may be different causes of action, but they both are based upon Richwood's rights under the Antonini note, and the result is, at least in part, a single injury to Richwood. *See id.* Richwood further contends that United General is "equitably subrogated" to its claim against Antonini, similar to an insurance carrier who pays a claim on behalf of its insured. Richwood does not dispute, however, that no contractual right or obligation existed between it and United General *until they entered into a settlement agreement.* United General did not settle

with a third party on behalf of Richwood — as an insurance carrier does in paying a claim — rather, it settled claims asserted directly against it, as a defendant in a lawsuit, in which Richwood asserted corresponding claims against Antonini, a co-defendant. United General may have independent claims against Antonini in connection with his failure to satisfy the first lien obligation, but nothing, before settlement of the suit against it, created rights United General could assert against Antonini as a "participant" in the prosecution of Richwood's claim.

Richwood's analysis further ignores the fact that (1) United General paid substantial funds; (2) the participation agreement does not extinguish United General's potential claims, if any, against Antonini to recoup its funds; and (3) Richwood agreed to forego the right of foreclosure it had through the Antonini note — a right it could enforce to the detriment of both United General and Antonini.

We decline to read the one satisfaction rule as narrowly as Richwood suggests. Antonini met his burden by making the trial court aware of the Richwood/United General settlement. The burden then shifted to Richwood to demonstrate a settlement allocation between (1) damages for which United General and Antonini are jointly liable, and (2) damages for which only United General was liable. *See Crown Life,* 22 S.W.3d at 392. Because Richwood did not satisfy its burden by merely casting the $750,000 settlement as a fee for participating in Richwood's claim against Antonini, the trial court did not abuse its discretion in applying a dollar for dollar settlement credit. *See Cohen,* 106

S.W.3d at 310 (holding that defendants are entitled to a credit equaling entire settlement amount because plaintiffs did not satisfy their burden).

*Capacity*

Richwood contends that the trial court abused its discretion in not reforming the judgment to reflect liability against Antonini, individually. Richwood maintains that through a third party action, it counterclaimed against Antonini in both his individual capacity, and as trustee. Antonini responds that Richwood raised Antonini's individual liability for the first time in post-trial motions. The record indicates that Richwood counterclaimed against Antonini "individually or as trustee." [9] Thus, Richwood contends, Antonini could have filed a verified denial if he wanted to assert the affirmative defense that he was sued in the wrong capacity. TEX.R. CIV. P. 93.

Richwood relies on two cases that hold that a party who fails to file a verified denial waives any capacity defense. *See Werner v. Colwell,* 909 S.W.2d 866, 870 (Tex.1995) (holding that party who fails to file verified denial waives any complaint of judgment rendered in capacity in which party was sued); *W.O.S. Const. Co. v. Hanyard,* 684 S.W.2d 675, 676 (Tex.1985) (in failing to file verified denial, party can be held liable in either of capacities in which he was sued). Neither of these cases apply, however, because Antonini has no complaint as to the capacity in which the trial court rendered judgment against him — rather, Richwood contends that the trial court erred in failing to include both capacities.

---

9. The caption of the counterclaim does not refer to Antonini as trustee or individually. However, the first paragraph states, "Richwood Investments ... is the present owner ... of all the rights of action of prior owners

... with respect to that certain promissory note executed by Plaintiff, Alfred Antonini (individually or as trustee) dated June, 1988 in the original principal sum of $900,000 [the "Note"]."

The real culprit here is the jury charge. It plainly instructs the jury to consider whether Antonini is liable in his capacity as trustee. Richwood did not object that the jury questions omitted Antonini's individual liability.[10] The failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal. *See* TEX.R.APP. P. 33.1; TEX.R. CIV. P. 274. Richwood neither complained about the trustee limitation in the charge, nor did it request issues regarding Antonini's individual liability. Richwood thus failed to secure affirmative liability findings for Antonini in his individual capacity. Without such findings, the trial court correctly rendered judgment against Antonini in his capacity as trustee.

## Conclusion

We conclude that (1) the trial court did not err in its evidentiary rulings, (2) factually sufficient evidence supports the jury's findings, and (3) the jury's failure to find in favor of Antonini on his counterclaims is not against the great weight and preponderance of the evidence, nor is Antonini entitled to judgment as a matter of law on them. We further conclude that Richwood's complaints as to the trial court's rendition of judgment are without merit. We therefore affirm the judgment of the trial court.

---

10. One of Richwood's proposed instructions referred to Antonini as trustee, and not individually. Moreover, on May 6, 2002, Richwood asked the trial court to enter judgment on its proposed judgment (without a settlement credit). The proposed judgment listed "Alfred J. Antonini, Trustee." After the trial court signed a final judgment on May 28, 2002, Richwood filed a motion to modify, correct or reform the judgment and a motion for new trial. In these motions, Richwood noted that the judgment did not include Antonini, individually.